# Illinois Official Reports

## Appellate Court

---

### *People v. Bardsley*, 2017 IL App (2d) 150209

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHAD R. BARDSLEY, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-15-0209 |
| Filed | June 8, 2017 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 14-CM-1332; the Hon. Robert A. Wilbrandt, Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Erin S. Johnson, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Patrick D. Kenneally, State's Attorney, of Woodstock (Patrick Delfino, Lawrence M. Bauer, and Diane L. Campbell, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion. Justices Jorgensen and Schostok concurred in the judgment and opinion. |

¶ 1 After a bench trial, defendant, Chad R. Bardsley, was convicted of aggravated assault of a private security officer (720 ILCS 5/12-2(b)(4) (West 2014)). He appeals, asserting that, because the State's evidence was sufficient to put self-defense at issue and did not rebut that defense, the State failed to prove his guilt beyond a reasonable doubt. We hold that self-defense, as a defense to assault (720 ILCS 5/12-1 (West 2014)) and derivative offenses, is an affirmative defense that a defendant forfeits by not raising. Furthermore, we hold that the State's presentation of evidence sufficient to *allow* a defendant to raise the defense does not *ipso facto* raise the defense; rather, a defendant must explicitly raise the defense to avoid forfeiture. Defendant here did not explicitly raise self-defense, and he thus forfeited it. We therefore affirm his conviction.

¶ 2                                     I. BACKGROUND

¶ 3 Defendant was charged by complaint with a single count of aggravated assault involving his near-biting of Kenneth Klean, a hospital security officer at Centegra Hospital. At defendant's bench trial, both parties made brief opening statements:

> "[The State]: ***
>
> Your Honor, there is going to be evidence and testimony from Kenneth Klean, a security officer for Centegra Hospital. He was acting within his capacities on July 19, 2014 when the defendant, Chad Bardsley, who was in an intoxicated state, attempted to bite Officer Ken Klean *** as Officer Klean was trying to restrain him because of his belligerent actions.
>
> ***
>
> THE COURT: Defense?
>
> [Defense counsel]: *** Everything the State says is entirely true except for one issue[:] [defendant] was never attempting to bite Mr. Klean. [Defendant] was brought in. He was in an intoxicated state.
>
> Due to his state and him being aggressive, he was put in restraints. *** He was able to bite into those restraints in order to loosen one of his hands on several occasions, Mr. Klean having to come in on every occasion and then refasten it.
>
> On one of the occasions, the last occasion, Mr. Klean walks in, and [defendant], again, was trying to loosen the strap in order to get his hand out. And it's at that point that Mr. Klean basically *** puts his hand in the lion's mouth and expected not to get bit.
>
> [Defendant] made no attempt to bite at Mr. Klean. Mr. Klean was never bitten."

¶ 4 Klean was the State's sole witness. One of his duties at the hospital was "patient watches" with intoxicated or suicidal patients. On July 19, 2014, at approximately 2:45 a.m., emergency medical services personnel brought to the hospital a patient Klean later learned was defendant. Officers of the Crystal Lake police department accompanied them. When defendant arrived, he was handcuffed face-down on a gurney. He had a laceration on one hand.

¶ 5     Klean observed that defendant was uncooperative, had slurred speech, and had a strong smell of alcohol on his breath. Police officers tried to interview defendant at the hospital, but he was uncooperative and used "obscene language." Defendant refused sutures for his hand; further, he insisted that he could not be made to stay at the hospital and that he wanted to go home. Hospital staff placed him in a hospital bed, but he kept trying to get up and was continually "arguing, swearing, yelling, [and] screaming." After several hours of this kind of behavior from defendant, a nurse directed security personnel, including Klean, to put defendant in restraints. Defendant resisted this by thrashing. He also continued to demand that he be allowed to go home.

¶ 6     After defendant had been in restraints for about an hour and a half, the nurse had Klean help adjust the restraints to better accommodate defendant's hand injury. Defendant then could reach his mouth to the restraint on his left wrist, and he began to bite at it. When defendant had been doing so for about an hour and a half, Klean decided that he needed to resecure the restraint. Defendant was upright in a bed with his hands restrained at his sides. As Klean moved to adjust the restraint, defendant lunged at Klean and tried to bite him. Klean estimated that defendant's mouth came within a centimeter of Klean's hand. Klean then sought police involvement.

¶ 7     The court granted the State's motion to admit a certified copy of defendant's previous conviction of possession of between 15 and 200 pills of MDMA (commonly known as ecstasy).

¶ 8     The State rested after defendant's cross-examination of Klean.

¶ 9     Defendant moved for a directed finding and, in so doing, "stipulated" that he had been intoxicated. As in his opening statement, his sole argument was that he had been biting at the restraints and had not tried to bite Klean. The court denied defendant's motion.

¶ 10    Defendant was the sole defense witness. He testified that, when he was brought into the hospital, he told the nurse that he was "claustrophobic" and that he was "freaking out" because of how he had been restrained on the gurney. He had not intended to bite, or bite at, Klean, but was only continuing to try to free his hand. On cross-examination, he agreed that he had been intoxicated but denied having used drugs. He agreed that the laceration was the result of playing with a knife while drunk, but he stated that he did not have that knife on his person when he arrived at the emergency room.

¶ 11    Klean testified in rebuttal. He gave a lay opinion, based on his experience as a police officer and, after his retirement from the police force, as a hospital security officer, that defendant was intoxicated when he arrived at the hospital. He also testified that defendant's intoxication was the reason that he was brought to the hospital. Finally, he testified that he had found a pocket knife in one of defendant's pockets when defendant arrived at the hospital, but he did not provide any specific evidence to suggest that this was the knife with which defendant had injured himself.

¶ 12    After the close of evidence, defendant's argument focused at first on his motion to dismiss the case on the basis that the indictment was fatally flawed. Defendant then returned his focus to his claim that Klean was simply incidentally in the way of his attempt to free himself.

¶ 13    The court rejected defendant's motion and made the following findings of fact:

"That the Defendant was voluntarily intoxicated on one or more substances. Although it doesn't rise to a level of a defense, it certainly relates to his ability to relate and observe.

*** Apparently at the hospital he was shouting some obscenities at staff, and his actions could only be described as somewhat aggressive and unruly. And then he was restrained.

*** After he was restrained, a period of time went by, and the Defendant apparently bit through one of the restraints on his bed.

For his own protection and for the protection of others, apparently the staff at the hospital called in Officer Klean, and Officer Klean had been in there for a while while the Defendant was acting somewhat aggressively. And Officer Klean then began the process of physically restraining the Defendant.

***

Officer Klean then put his hand on one of the Defendant's arms, and *** the Defendant apparently *** lunged *** at it with his head and attempted to bite at least the spot where Officer Klean had his hand.

* * *

First of all, did the Defendant act without lawful authority? *** The Court can't see any lawful authority for trying to bite your restraints off.

* * *

The Court finds that the Defendant knew, number one, that he was in a hospital bed being treated for a wound; number two, that he was surrounded by hospital staff and a security guard; and number three, that they were attempting to restrain him both physically and with hospital restraints.

Therefore, when Defendant turned his head and lunged with his head toward the area where he was being restrained, this action was not an accident. *** And, at the time of the action, with Officer Klean's hand already upon him, the Court finds Defendant was consciously aware that this conduct was practically certain to cause [O]fficer Klean to become in reasonable apprehension of receiving a battery.

Even if Defendant's thinking at the time was cloudy and he later claims that, well, this wasn't intentional, the Court finds the actions were made knowingly and, therefore, the Court finds the Defendant guilty."

¶ 14     The court sentenced defendant to conditional discharge with community service. Defendant moved for reconsideration of his motion to dismiss, and upon the denial of that motion, he timely appealed.

¶ 15                                    II. ANALYSIS

¶ 16     On appeal, defendant asserts that the State failed to prove his guilt beyond a reasonable doubt. In particular, he asserts that the State's evidence showed that defendant's lunge at Klean was legally justified as self-defense against a battery, specifically, unwanted medical treatment. The State argues that defendant is improperly attempting to raise this affirmative defense for the first time on appeal. Defendant replies that defense counsel's arguments to the court "were sufficient to put [the defense] before the court *** [and] that the State's own witness presented evidence sufficient to raise the affirmative defense."

- 4 -

¶ 17    We hold that defendant forfeited the affirmative defense of self-defense because he did not raise it in the trial court. It is true that evidence sufficient to entitle a defendant to consideration of an affirmative defense can come wholly from evidence put on by the State. See, *e.g.*, *People v. Cord*, 258 Ill. App. 3d 188, 192 (1994). That evidence need not amount to anything like proof of the defense: even "slight evidence" to support the defense is sufficient to allow consideration by the trier of fact. *E.g.*, *People v. Kucavik*, 367 Ill. App. 3d 176, 179 (2006). Once a defendant has adequately raised an affirmative defense, the State must rebut it beyond a reasonable doubt. *E.g.*, *People v. Jeffries*, 164 Ill. 2d 104, 127 (1995). The parties agree that these principles govern here. The dispute is over what it means to "raise" a defense. We conclude that the mere presence in the State's evidence of facts sufficient to permit a defendant to raise a defense is not by itself sufficient to trigger the requirement that the State disprove the defense.

¶ 18    Initially, we note that defendant appears to concede that self-defense was an *affirmative defense* to the aggravated assault charge such that the State did not need to prove lack of justification as an element of the offense. See 720 ILCS 5/7-14 (West 2014) ("A defense of justifiable use of force *** is an affirmative defense."). The aggravating factor of the offense at issue here is that the assault was on a private security officer; thus, the elements that we need to consider are the elements of the underlying offense of assault. The statute on assault states that a "person commits an assault when, *without lawful authority*, he or she knowingly engages in conduct which places another in reasonable apprehension of receiving a battery." (Emphasis added.) 720 ILCS 5/12-1(a) (West 2014). But the emphasized phrase is not an element of the offense.

¶ 19    Although statutory language similar to the "without lawful authority" clause has been deemed in some statutes to make lack of authority an element of the relevant offense, it does not have that effect in the assault statute. Two partially inconsistent lines of authority both lead to that conclusion. One line of authority simply rejects the idea that an absence or lack can be an element of an offense. This line has its most obvious start in *People v. Hussey*, 3 Ill. App. 3d 955, 956 (1972), in which the court held that the phrase " 'without legal justification' " was unnecessary for a sufficient battery indictment. In *People v. Worsham*, 26 Ill. App. 3d 767, 771 (1975), following *Hussey*, the court held that lack of justification was not an element of battery. These two decisions stated that "a negative" could not be an element of an offense. Although *Worsham* involved battery, it became the basis for the directions included with Illinois Pattern Jury Instructions, Criminal, No. 11.01 (4th ed. 2000), which provides that instructions on *assault* should include the "lack of lawful authority" language only when the defendant has raised an affirmative defense. In an analysis inconsistent with that in *Hussey* and *Worsham*, the court in *People v. Pettus*, 84 Ill. App. 3d 390, 393 (1980), held that "without authority" language *must* be treated as an element of the offense, but *only if* lack of authority "is fundamental to the offense." Thus, the *Pettus* court held that lack of authority to enter a home *is* an element of home invasion because, absent that requirement, the offense charged would be an entirely different one—in that case, aggravated assault or battery. *Pettus*, 84 Ill. App. 3d at 393. However, applied to the offense of assault, the rationale in *Pettus* requires the conclusion that lack of authority is not an element of assault: lack of authority is not fundamental to assault. When an assault is justifiable, an assault has still occurred, but the law excuses it. The evil that the law seeks to

prevent is still there, but another need overrides it. This is in contrast with a trespass offense, in which, when authority exists, there is no evil for the law to excuse.

¶ 20    Defendant argues that self-defense was set out to a degree sufficient to require the court to consider it. We do not agree. The court addressed and rejected two intertwined defenses, and we do not see that defendant raised any others. First, it rejected defendant's claim that he did not direct his biting at Klean. It explicitly ruled that defendant's testimony on this point was not credible, in large part due to defendant's intoxication during the incident. Second, it addressed defendant's suggestion that he was minding his own business, lawfully chewing at his restraints, when Klean, in the course of interfering, deliberately moved his hand into harm's way. It rejected this on the basis that it could not "see any lawful authority for [defendant's] trying to bite [his] restraints off."

¶ 21    We need not address the sufficiency of either of these defenses, or of the court's rejection of them, to conclude that neither was self-defense. "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." 720 ILCS 5/7-1(a) (West 2014). The defense that defendant's biting had only an accidental effect on Klean is inconsistent with a claim of self-defense, as it precludes defendant's belief that the action was necessary. Likewise, the defense that "Klean basically *** put[ ] his hand in the lion's mouth" had nothing to do with defendant's perceiving Klean as a threat; rather, it was simply an implication that Klean's action was the reason why his hand ended up in proximity to defendant's teeth. This is the closest that defendant came to arguing self-defense, and it is not close at all.

¶ 22    Defendant suggests that self-defense was *in fact* "raised," such that the State had to rebut it. He implies that this occurred merely because Klean's testimony contained the "slight evidence" that would have entitled him to a self-defense instruction in a jury trial. This argument is effectively the same as a claim that—in a case such as this one, in which defendant neither had to declare any affirmative defense in discovery nor had to seek jury instructions on the defense—the defense was not subject to forfeiture. We hold that the defense was subject to forfeiture. It would be one thing if the only issue were whether the court needed to consider the defense. As defendant correctly argues, the court is presumed to know the law. See, *e.g.*, *People v. Mandic*, 325 Ill. App. 3d 544, 546 (2001). We thus can expect it to consider any defense *properly* before it. However, "[o]nce an affirmative defense is raised, the State has the burden of proving the defendant guilty beyond a reasonable doubt as to that issue." *Jeffries*, 164 Ill. 2d at 127. Under defendant's rule, the State would have to disprove *every* affirmative defense of which even "slight evidence" exists or risk a *post hoc* reexamination of the evidence for new potential defenses on appeal.

¶ 23    We end with a procedural note. Because defendant did nothing to raise self-defense in the trial court, we have not addressed what he would have needed to do or when he would have needed to do it. We leave those questions for another decision. That said, we emphasize that the main reason a defendant must specifically raise an affirmative defense is to alert the State to what it must rebut. That purpose demands that the defendant raise the defense when the State can present further evidence or argument.

¶ 24                                    III. CONCLUSION

¶ 25          For the reasons stated, we affirm defendant's conviction. As part of our judgment, we
grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS
5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).


¶ 26          Affirmed.