2020 IL App (1st) 172706
No. 1-17-2706
Opinion filed November 30, 2020

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 6783 |
| | ) | |
| JONETTA SHEPHERD, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Griffin concurred in the judgment and opinion.
Justice Pierce dissented, with opinion.

**OPINION**

¶ 1    The trial court found defendant Jonetta Shepherd guilty of unlawful use or possession of a weapon by a felon (UUWF) and sentenced her to 42 months' imprisonment. On appeal, Shepherd contends that the State failed to prove beyond a reasonable doubt that her possession of the firearm was not justifiable by reason of necessity. The State correctly argues that Shepherd's trial counsel forfeited the affirmative defense of necessity by failing to raise it in an answer to the State's request for discovery. Anticipating that argument, Shepherd asserts her trial counsel was ineffective for failing to raise the necessity defense. We agree, reverse her conviction, and remand for a new trial.

¶ 2                                         Background

¶ 3      The State charged Shepherd with four counts of UUWF and six counts of aggravated unlawful use of a weapon. Before trial, Shepherd's counsel told the court and the State that Shepherd would file a written answer to discovery. Counsel never filed an answer.

¶ 4      In opening statements, Shepherd's theory was that the State would not meet its burden to prove Shepherd's knowledge and intent to possess a firearm. Counsel highlighted expected testimony that police officers found a gun in a purse allegedly belonging to Shepherd and that Shepherd had not put the gun there.

¶ 5      Officer Graylin Watson testified that he and his partner responded to a call reporting a woman in sunglasses and black clothing with a gun in her purse. When they arrived, they saw a woman, identified in court as Shepherd, who matched the call's description. The caller also described a man in a green shirt and pants who was grabbing for the gun in the woman's purse. When Watson's partner got out of their car, Shepherd dropped her purse to the ground. Watson explained that he saw her holding the purse for four to six seconds before dropping it. Watson looked in the open purse and saw a 9-millimeter firearm with an extended clip loaded with 18 rounds in the magazine and one in the chamber. He did not find in the purse either a Firearm Owners Identification Card or a Concealed Carry License.

¶ 6      Watson arrested Shepherd. At the police station, he heard her say, "I'm stupid. I'm on parole. I messed up my life." He did not record this statement in any of his reports but did provide it to the person assigned to felony review of the incident. Watson never spoke to the man in the green shirt and pants, nor did he speak to any of the other six people in the vicinity of where he found the purse.

¶ 7    The State introduced a certified copy of Shepherd's 2016 conviction for aggravated battery of a peace officer.

¶ 8    Shepherd testified that she and some friends, including Von Civils, were hanging out with others she was not familiar with. Shepherd left the group to use the restroom located inside a nearby "neighborhood candy store." Before leaving, Shepherd handed her purse to Von Civils, who had on a green shirt and jeans, because she did not want the store owner to think she was going to steal anything. Shepherd used the restroom, bringing only her cell phone with her, and was gone for roughly five to seven minutes.

¶ 9    When Shepherd came back, her purse was on the ground next to Von Civils. Shepherd picked it up and saw a gun inside, which she denied putting there. She testified, "I was scared. I was shocked. I didn't know what to do. I was just stuck." Shepherd tried to get someone to remove the gun from her purse for her because she did not want to touch it, but nobody did. Shepherd did not personally take the gun out of her purse because she did not want her fingerprints on it, did not empty her purse because she was "in shock," and knew the firearm was in her purse when she dropped it. Shepherd did not learn to whom the firearm belonged until after she was incarcerated.

¶ 10    In closing, Shepherd's counsel argued that Watson never testified that he saw Shepherd with a weapon and that Shepherd's testimony that she found the firearm in her purse and did not want to touch it for fear she would get her fingerprints on it was credible.

¶ 11    Based on this evidence, the trial court found Shepherd guilty of UUWF. In announcing its decision, the trial court stated:

    "I do find Officer Watson to be very credible. As to the defendant, *** her story is

    that she was innocently trying to use the washroom at someone's informal candy

store in their home and left a purse outside so she wouldn't get accused of stealing something ***. She realized immediately upon coming out that there was a gun and did nothing about it until the police came, at which point when she saw that the police were there, at that point she abandoned the gun, but she had it for a period of time before that. Even *** if I were to believe her, I'm not so certain that I do, but if I were to believe her, possession always has to be a voluntary act and *** if it's a situation where it's really not yours, but somehow it ends up in your lap or in your purse, you have to terminate the possession in a reasonable time, like, right away, and that didn't happen. All that happened was that she abandoned the purse with the contraband when she saw the police and did nothing about abandoning it either."

¶ 12    After a hearing where the parties presented arguments in aggravation and mitigation, the trial court sentenced Shepherd to 42 months' imprisonment.

¶ 13                                    Analysis

¶ 14    Neither party disputes that Shepherd's conduct satisfies the elements of UUWF—a person knowingly possessing a firearm having been convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2016). Shepherd's testimony showed the gun was in her purse, which was in her possession, and she knew it was there. The State also introduced a certified copy of her conviction for aggravated battery of a peace officer, which constitutes a felony. *Id.* § 12-3.05(d)(4), (h). The State proved the elements of UUWF.

¶ 15                        *Affirmative Defense of Necessity*

¶ 16    Rather, Shepherd argues the State failed to prove her guilty of UUWF because it failed to prove, beyond a reasonable doubt, that her possession of the firearm amounted to justifiable necessity. The State responds that Shepherd forfeited this argument because necessity constitutes an affirmative defense and counsel failed to put the State on notice of the defense by failing to file an answer. We agree with the State.

¶ 17    Necessity gives rise to an affirmative defense. See *People v. Jackson*, 2013 IL 113986, ¶ 23 (listing necessity as example of affirmative defense). A defendant forfeits an affirmative defense by failing to make it in the trial court. *People v. Bardsley*, 2017 IL App (2d) 150209, ¶ 1. We hold defendants to their forfeiture of affirmative defenses because once an affirmative defense has been presented, the State must provide evidence to rebut the defense beyond a reasonable doubt. *Id.* ¶ 17. Where a defendant fails to properly raise an affirmative defense, the State loses its ability to determine what it must rebut and "would have to disprove *every* affirmative defense of which even 'slight evidence' exists or risk *** new potential defenses on appeal." (Emphasis in original.) *Id.* ¶ 22. The typical method for alerting the State of a defense involves the answer to discovery. See Ill. S. Ct. R. 413(d) (eff. July 1, 1982). Here, the parties do not dispute trial counsel's failure to file an answer at all, let alone an answer raising the defense of necessity.

¶ 18    That said, *Bardsley* left open the possible mechanisms by which a defendant could make an affirmative defense. See *Bardsley*, 2017 IL App (2d) 150209, ¶ 23 ("we have not addressed what [defendant] would have needed to do [to raise the affirmative defense] or when he would have needed to do it"). Maybe explicitly raising it in a closing argument would be enough; maybe raising it for the first time in a motion for a new trial would even be enough, allowing the State to argue against it based on the facts in the record. Like *Bardsley*, however, we need not answer the

question. Shepherd's counsel never mentioned the affirmative defense of necessity at any time during any argument before the trial court. By any measure, trial counsel forfeited the defense.

¶ 19                    *Ineffectiveness of Counsel*

¶ 20    Anticipating the State's claim of forfeiture, Shepherd also argues that counsel provided ineffective assistance by foregoing reliance on the affirmative defense of necessity. Specifically, she argues that counsel's failure to serve notice on the State of the use of the necessity defense constitutes deficient performance and that performance prejudiced her because trial evidence supported the defense. We evaluate claims of ineffective assistance of counsel under the familiar standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Utley*, 2019 IL App (1st) 152112, ¶ 36. To demonstrate ineffective assistance, a defendant must show that (i) his or her counsel's performance was deficient and (ii) any deficient performance prejudiced him or her. *Id.* We review claims of ineffective assistance of counsel *de novo*. *Id.* ¶ 37.

¶ 21    The State presented no argument about deficient performance. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("[p]oints not argued are forfeited"). Because the State forfeited any argument about counsel's deficiency we assume, without deciding, that counsel rendered deficient performance. See *People v. Cruz*, 2013 IL 113399, ¶ 19 (declining to decide issue on merits where State forfeited it). Instead, the State asks us to affirm because, in its view, the purportedly overwhelming evidence of Shepherd's guilt discredits prejudice. We disagree.

¶ 22    To show prejudice from counsel's deficient performance, Shepherd must demonstrate a reasonable probability that the result of the trial would have been different had counsel performed adequately, meaning " ' "a probability sufficient to undermine confidence in the outcome." ' " *People v. Gonzalez*, 385 Ill. App. 3d 15, 19 (2008). This is not a high burden. See *People v.*

*Lucious*, 2016 IL App (1st) 141127, ¶ 45 ("prejudice may be found even when the chance that minimally competent counsel would have won an acquittal is significantly less than 50 percent as long as a verdict of not guilty would be reasonable" (internal quotation marks omitted)). Shepherd has met that burden here.

¶ 23    Where a defendant claims ineffective assistance for failing to assert a defense, the record must contain enough evidence to support the theory. See *People v. Tenner*, 175 Ill. 2d 372, 391 (1997) (finding lack of prejudice where judge's ruling on affirmative defense was based on "inadequacy of the evidence offered in support of the theory"). In the specific context of affirmative defenses, it takes only "very slight evidence" supporting the defense to submit it to the factfinder. See *Gonzalez*, 385 Ill. App. 3d at 19.

¶ 24    Necessity has three basic elements: (i) defendant must be "without blame in occasioning or developing the situation" leading to criminal conduct, (ii) defendant must reasonably believe that his or her conduct was necessary to avoid a public or private injury, and (iii) the public or private injury must be greater than the injury caused by the defendant's own conduct. 720 ILCS 5/7-13 (West 2016). We find "very slight evidence" supporting the necessity defense.

¶ 25    There is direct evidence of the first element. Shepherd testified that she did not put the gun in her purse and found it there after leaving it with others when she went to the restroom.

¶ 26    Also, direct evidence establishes that Shepherd believed her conduct as necessary to avoid a private injury. Shepherd testified that she did not want to touch the gun for fear of getting her fingerprints on it, leading to and implying that she owned the gun. We also find some evidence that Shepherd's temporary possession was necessary to avoid a public injury. Shepherd's

temporary possession of the gun, while she attempted to find the rightful owner, kept the gun securely in the purse instead of out on the street.

¶ 27    As to the final element—the balance of harms—the State posits that a reasonable alternative would have been dumping the purse's contents on the sidewalk. We do not agree that this would be a reasonable alternative. Shepherd's temporary possession of the gun while she tried to get rid of it—in her purse, obstructed from public view, not being brandished by anyone—offers a better alternative to leaving the gun in plain view on the ground where anyone could find it, take it, and use it. Moreover, because the police charged Shepherd with only a possessory offense, the relative harm caused by her momentary possession of the gun was small.

¶ 28    Because some evidence supports the necessity defense, we must consider whether Shepherd's counsel's failure to present the defense prejudiced the trial's outcome. We find it did.

¶ 29    Trial counsel's opening statement focused on the State's inability "to meet their burden to prove knowledge and intent to possess a firearm" primarily because "[Shepherd] did not put that gun in her purse." Two things stand out from counsel's statement: (i) counsel appeared to be laboring under a mistaken impression that Shepherd would not be guilty of possession as long as she was not the one who put the gun in her purse or otherwise did not intend to possess it and (ii) counsel conceded that officers found the gun in her purse, essentially admitting possession. Then, during Shepherd's testimony, counsel elicited an admission that she had the gun in her purse and knew it was there—the precise elements counsel told the court the State would not be able to prove.

¶ 30    Counsel repeated similar errors in closing argument, asking the court to find Shepherd not guilty because she did not touch the gun, all while admitting (again) that the gun was in her purse. In finding Shepherd guilty, the trial court rejected this argument: "[I]f it's a situation where it's

really not yours, but somehow ends up in your lap or in your purse, you have to terminate the possession in a reasonable time." The court did not consider necessity in its findings. We presume the trial court (here, quite able) knows the law, including the law of affirmative defenses, but the court is not obligated to consider a defense that counsel does not put before it. *Bardsley*, 2017 IL App (2d) 150209, ¶ 22. We cannot expect the trial court to look at the evidence through the lens of the necessity defense unless that defense was presented. See *id.* Counsel's failure to put the State on notice of the necessity defense and to put that defense before the trial court undermines our confidence in the outcome. See *Gonzalez*, 385 Ill. App. 3d at 19.

¶ 31    The dissent rejects any claim of prejudice, finding it clear that counsel asserted and the trial court considered a necessity defense. Not even the State reads the record that way, repeatedly arguing in its brief before us that "the defense in this case was reasonable doubt," that "defense counsel never attempted to elicit any type of 'necessity defense,' " and that "there was no claim of necessity." Even in the section of its brief arguing against Shepherd's claim of ineffective assistance of counsel, the State resists any implication that the record (either through testimony or argument) presented a necessity defense to the trial court. The State claims that "there was no evidence to amount to a necessity defense" and "there was overwhelming evidence that [Shepherd] did not *** present any evidence to support the necessity defense." This seems like a position we should take seriously, given it is the State's burden to rebut an affirmative defense beyond a reasonable doubt. See *Bardsley*, 2017 IL App (2d) 150209, ¶ 22.

¶ 32    As for the dissent's suggestion that defense counsel in criminal proceedings will intentionally sit on their hands instead of raising a viable affirmative defense at the earliest opportunity, our supreme court has roundly rejected that kind of supposition. In the plain error

context, our supreme court described as "fanciful and denigratory to the defense bar" the State's argument that defense attorneys would have " 'an improper incentive to "sit on their hands" and allow errors to unfold without objection.' " *People v. Sebby*, 2017 IL 119445, ¶¶ 70-71. As with forfeited claims raised as plain error, so to with forfeited claims raised as ineffective assistance of counsel. It is "fanciful and denigratory" to assume that counsel who intends to raise an affirmative defense will intentionally fail to put the State and the court on notice of that defense before trial. Instead we treat the forfeiture as what it is—a mistake (a/k/a ineffective assistance of counsel).

¶ 33     The dissent is entitled to its view of the factual merits of the necessity defense; we need not further rehash our conclusion on that score. We reiterate that Shepherd need only establish prejudice sufficient to undermine confidence in the outcome—a "significantly less than 50 percent" chance that the outcome of trial would have been different. (Internal quotation marks omitted.) *Lucious*, 2016 IL App (1st) 141127, ¶ 45. With that understanding of *Strickland* prejudice, we reverse and remand for a new trial.

¶ 34     Reversed and remanded.

¶ 35     JUSTICE PIERCE, dissenting:

¶ 36     The majority in this case finds that defense counsel was ineffective for failing to serve notice on the State of the intent to assert the defense of necessity because it resulted in prejudice to defendant where the evidence supported the defense. I respectfully disagree. The defendant suffered zero prejudice in this case, since defense counsel early in the proceedings put the court and the prosecution on notice of the reliance on a necessity defense. Defendant's testimony, that she relies on in support of her appeal, encompassed what she considered to be sufficient evidence

to establish the defense of necessity, and, critically, her testimony setting forth her claimed necessity defense was considered and rejected by the trial court in her bench trial.

¶ 37    As set forth in her appellant's brief, defendant's sole contention on appeal is that the State failed to prove illegal possession of a weapon "because the defense at trial nevertheless conformed with the necessity defense described in 720 ILCS 5/7-13, and the State and the [trial] court treated it accordingly." Defendant readily concedes that "[T]he State cross-examined Shepherd as to why she did not immediately remove the gun from her purse, and the trial court considered whether she terminated her possession in a reasonable enough time to justify her conduct." In other words, according to the defendant, the State did not meet its burden because defendant's testimony should have been accepted as credible and her testimony was sufficient to establish a necessity defense.

¶ 38    Because no formal answer to discovery was filed, defendant offers the alternative appellate argument of ineffective assistance of counsel in anticipation that either this court or the State would raise the issue of forfeiture. True to form, the State argues forfeiture because the necessity defense argument is being raised for the first time on appeal because no notice of an affirmative defense was filed during discovery and the term "necessity" was never mentioned at trial or in defense counsel's closing argument. The majority takes the bait. In doing so, the majority creates a new strategy for the defense bar: do not file pretrial discovery asserting an affirmative defense, but present evidence in the nature of an applicable affirmative defense. If convicted, a defendant has a built-in appellate issue of ineffective assistance of counsel for failing to file a notice of an affirmative defense. Contrary to the majority's assertion, the creation of this "built-in appellate issue" is not a reflection on the defense bar; rather, it is a commentary on what will result from unsound appellate reasoning in the review of this appeal.

¶ 39   I would find that, in this case, defendant was found guilty beyond a reasonable doubt where the defendant unsuccessfully presented evidence in the nature of a necessity defense, without objection or limitation from the State; where the trial court considered and rejected defendant's testimony; and where the trial court correctly found the defendant guilty. Further, I would find that there was no prejudice where defense counsel failed to file notice of an affirmative defense but introduced evidence of an affirmative defense that was rejected by the trial court.

¶ 40   Defendant readily admits that defense counsel never specifically put the State on formal notice that it intended to assert the defense of necessity. If any complaint lies in this regard, it lies with the State. However, defendant nevertheless presented testimony containing all the "facts" that established a defense of necessity. Thus, admitting that she presented an affirmative defense, defendant seeks a new trial because either her affirmative defense was not overcome beyond a reasonable doubt, which it was, or her counsel did not file an answer in discovery disclosing the exact defense that was presented, and rejected, during her bench trial. Under the facts of this case, granting a new trial is absurd.

¶ 41   The defense of necessity involves the following elements: (1) the person claiming the defense was without blame in occasioning or developing the situation and (2) the person reasonably believed that his conduct was necessary to avoid a greater public or private injury than what reasonably might have resulted from his own conduct. 720 ILCS 5/7-13 (West 2016). The burden of proving the defendant's guilt beyond a reasonable doubt always rests on the State (*People v. Abadia*, 328 Ill. App. 3d 669, 679 (2001)), and once an affirmative defense has been raised, the State has the burden of proving the defendant guilty beyond a reasonable doubt as to that issue (*People v. Guja*, 2016 IL App (1st) 140046, ¶ 46).

¶ 42     This was a bench trial where the arresting officer testified to the elements of the charge and to defendant's voluntary admissions made after her arrest that "I'm stupid," "I'm on parole," and "I messed up my life." In her defense, defendant testified that she was with friends and left her purse with Von Civils while she went to use the bathroom. When she returned, her purse was on the ground next to Civils. She picked up her purse, opened it, and discovered there was a gun inside. The gun was not in her purse when she left it with Civils. She testified that she was scared and shocked and did not know what to do. Because she was a felon, if she were caught with the gun, she would be arrested. She spent several minutes trying to figure out who the gun belonged to and trying to get someone to remove the gun from her purse before the police arrived. She dropped her purse on the ground when the police arrived. Notably, she did not deny her admissions to the arresting officer.

¶ 43     Defendant's testimony was clearly an attempt to assert the elements of a necessity defense. Her testimony demonstrates that her counsel presented a defense of necessity unrestrained and unimpeded in any manner by objection from the State or by any comment from the trial court. Because her testimony was rejected, defendant basically claims that her testimony should have been accepted and, should this court reject her reasonable doubt argument, she throws in a *Strickland* claim in hopes of obtaining a retrial. Clever work by appellate counsel; however, not clever enough in my estimation to warrant a new trial.

¶ 44     Defendant testified and admitted to possessing the gun but denied knowing how it got into her purse. See *People v. Pickett*, 217 Ill. App. 3d 426, 428 (1991) (for the defense of necessity to be available, defendant must admit she committed the offense). She also testified that she attempted to locate the gun's owner. By her temporary possession of the gun while she attempted to find the gun's owner, she kept the gun securely in her purse instead of out on the street.

Defendant testified on cross-examination that she did not take the gun out of her purse because she did not want to touch the gun and leave her fingerprints on it. She further testified that she did not merely empty her purse onto the ground because she was "in shock." See *People v. Janik*, 127 Ill. 2d 390, 399 (1989) (The defense of necessity "is viewed as involving the choice between two admitted evils where other optional courses of action are unavailable [citations], and the conduct chosen must promote some higher value than the value of literal compliance with the law [citation].") Clearly, no testimony was offered on the greater evil she sought to avoid or that her conduct promoted some higher value than the conduct she engaged in. Even if such testimony had been offered, it did not have to be accepted by the trial court. The trial court found defendant's testimony unconvincing, and its credibility determination must be respected. *People v. Brown*, 2013 IL 114196, ¶ 48.

¶ 45    Once evidence of a necessity defense is presented, the trier of fact determines whether the defendant's actions were objectively reasonable under the circumstances presented and whether the defendant's reasonable belief has been held to encompass an objective factor. See *People v. Kucavik*, 367 Ill. App. 3d 176, 180 (2006). The factors involved in determining the validity of a necessity defense inherently go to the weight and credibility of the evidence. See *People v. Kite*, 153 Ill. 2d 40, 46 (1992). It is clear from the record that defendant presented a necessity defense. The court considered and rejected defendant's necessity defense because it simply did not find defendant's version of the events to be credible, and the court therefore rejected defendant's testimony that, in defendant's words, "nevertheless conformed with the necessity defense." Indeed, when the court remarked that it found Officer Watson to be "very credible," this must have included his testimony of defendant's admissions. With respect to defendant's version of the events, the court remarked, "her story is that she was innocently trying to use the washroom" (the

first element of the defense: she was without blame in developing the situation) and "I'm not so certain that I [believe her]." The court later stated that "all that happened was that she abandoned the purse with the contraband when she saw the police and did nothing about abandoning it either [*sic*]. And that's if I even agree with her story. So there's a finding of guilty."[1] The experienced trial judge is presumed to know the law, and he was in a superior position to judge defendant's credibility. We should defer to the trial court's credibility determinations and affirm this conviction.

¶ 46    Defense counsel did not specifically indicate that a necessity defense would be asserted. However, this court may review this claim because, as the defendant admits in her appellate brief, "the defense at trial nevertheless conformed with the necessity defense described in 720 ILCS 5/7-13, and the State and the court treated it accordingly." How the majority can ignore this statement and claim counsel was ineffective is beyond comprehension. See *People v. Crowder*, 2018 IL App (1st) 161226, ¶¶ 34-35 (finding State failed to negate evidence supporting necessity defense where defendant argued he "had no choice but to grab the gun," though counsel did not explicitly assert necessity as a defense at trial). The State never objected to this testimony, and Shepherd was cross-examined as to why she did not immediately remove the gun from her purse. The trial court considered whether she reasonably terminated her possession to justify her conduct. The court also remarked that even if Sheppard was in possession of the gun through no fault of her own, she did not take adequate steps to rid herself of the gun within a "reasonable time" (the second element of the defense: a reasonable belief her conduct was necessary to avoid a greater public or private injury.)

---

[1] I presume the court said or meant to say "and did nothing about abandoning it *earlier*."

¶ 47    Again, defense counsel presented a defense of necessity that was ultimately rejected by the trier of fact. For this reason, I would find that defendant suffered no prejudice and that counsel's performance was not even close to meeting the *Strickland* standard for a showing ineffective assistance of counsel. Defendant suffered no prejudice from defense counsel's failure to formally serve notice on the State of an intent to assert the defense of necessity because the defense was asserted.

¶ 48    The majority's conclusion results in a second trial where the defendant may or may not choose to testify. The State will offer the same testimony in support of the charge. If defendant does not testify, she will likely be convicted again. If she does testify, she presumably will offer the same testimony she presented in this trial to advance the affirmative defense of necessity, her testimony presumably will be rejected, and she will be convicted. The term "second bite at the apple" does not do justice to the gift the majority is bestowing upon the defendant. If the majority is sincere in its complimentary remarks about the trial judge, it would acknowledge that (1) the trial judge, admittedly not perfect, is presumed to know the law, (2) he has likely prosecuted and presided over more criminal trials than the entirety of the justices in this appellate district, and (3) he enjoys an excellent reputation for fairness, understanding of the law, and a keen appreciation for assessing credibility and according appropriate weight to the evidence, such that the procedural failure to file a formal notice of an affirmative defense would not impair his ability to render a fair and just verdict where the elements of the affirmative defense are offered. In short, had a formal notice of an affirmative defense of necessity been filed, the defendant's testimony would have been the same, the trial court's rejection of defendant's testimony because it "didn't believe her" would have been the same, and the finding of guilt would have been the same.

¶ 49    The defendant was not prejudiced in any regard. Defendant claims on appeal that her testimony established that her affirmative defense was sufficient to defeat the State's burden of proof beyond a reasonable doubt. But that testimony was rejected. The State proved her guilt beyond a reasonable doubt. There was no ineffective assistance by her trial counsel where defendant presented the defense she wanted.

¶ 50    Lastly, the majority takes me to task for not following the State's argument that "the defense in this case was reasonable doubt," that "defense counsel never attempted to elicit any type of 'necessity defense,' " and that "there was no claim of necessity." *Supra* ¶ 31. They go on to admonish that "we should take [the State' position] seriously given it is the State's burden to rebut an affirmative defense beyond a reasonable doubt." *Supra* ¶ 31. First, we are under no compulsion to accept the State's argument, especially where it is flat out wrong. It is an argument that is obviously advanced to defeat defendant's claim that a necessity defense was asserted at trial, which the defense undoubtedly did. Second, the State's position in this regard is so incorrect that even the majority rejects the argument when it finds evidence of each element of a necessity defense in the record (*supra* ¶¶ 25-27) and makes its finding that "some evidence supports the necessity defense" (*supra* ¶ 28). If the majority is so enamored with the State's position, it should "take it seriously," adopt it, and affirm the conviction.

¶ 51    I respectfully dissent.

No. 1-17-2706

| | |
|---|---|
| **Cite as:** | *People v. Shepherd*, 2020 IL App (1st) 172706 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CR-6783; the Hon. James B. Linn, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Katherine M. Donahoe, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Iris G. Ferosie, and Christine Cook, Assistant State's Attorneys, of counsel), for the People. |