2024 IL App (1st) 201245-U

No. 1-20-1245

Order filed February 9, 2024

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 13468 |
| | ) | |
| MICHAEL RATTER, | ) | Honorable |
| | ) | Patrick Coughlin, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant Michael Ratter's hate crime convictions are affirmed where the State proved beyond a reasonable doubt that defendant did not act in self-defense.

¶ 2    Defendant Michael Ratter appeals his convictions on two counts of hate crime. The issue on appeal is whether the State proved, beyond a reasonable doubt, that defendant did not act lawfully in self-defense. For the following reasons, we affirm the circuit court.

¶ 3                                    BACKGROUND

¶ 4    On the evening of July 4, 2017, complaining witnesses Trina Davis and her son Keith Davis were standing on the sidewalk next to Keith's car, which was parked in the street outside of Trina's

house in Calumet City, Illinois. The pair were talking and listening to music while waiting for the fireworks to start. Trina's neighbor, defendant Michael Ratter, watched them from the back porch of his house across the street. Defendant did not say anything to Trina and Keith; he only watched them.

¶ 5     Keith's friends Jason and Rashon were driving through the neighborhood when they saw Keith and stopped to chat with him. They parked their car adjacent to Keith's car, so that it was in the middle of the street. Keith walked into the street and started to talk with his friends through the car's driver side window. Defendant began shouting racial slurs and other profanity at the group, claiming that Jason and Rashon were parked illegally and that they had to leave. Additionally, defendant began to take pictures of Keith and his friends with his phone. The defendant and the group are of different races. The group ignored defendant's insults but when they saw he had his phone out, they asked defendant why he was taking pictures of them. Defendant continued to demand that they leave because they were parked illegally, while using more racial slurs. The group responded by yelling profanity and insults towards defendant. For the next couple minutes, an argument ensued during which both sides used "foul and offensive language." However, no one in the group threatened defendant or had a weapon.

¶ 6     At this point, Trina's and Keith's versions of the evening's events differ in some respects. Keith testified that, as the argument continued, Jason and Rashon exited the car. Defendant then went inside his house and returned several seconds later with a "long brown rifle." Defendant did not point the rifle at the group but instead rested it on his porch. Once they saw that defendant was armed, Rashon and Keith retreated to the sidewalk. Jason instead walked closer to defendant, continuing to argue with him. Jason never left the street and did not enter onto defendant's

property. Defendant then picked up his firearm and pointed it at the group. He told them to "get away" while continuing to use racist language. When defendant pointed his firearm at the group, Keith, scared that he might be shot, tried to take cover behind his car. After a couple of minutes, the argument ended, and defendant returned inside his house while Jason and Rashon drove away. At this point, Trina called the police.

¶ 7    Trina, on the other hand, testified that Jason and Rashon were still sitting inside their car when defendant retrieved his rifle from his house, placed it on his porch, and then pointed it at the group. Defendant told them to "leave and get away" while using racist language. Trina feared for her life because she thought defendant was going to shoot her. She immediately went into her house to call the police. When she went back outside, still on the phone with the police, she saw that Jason and Rashon were standing on the street next to their car arguing with defendant. Defendant was no longer pointing his rifle at them. The argument then ended when defendant went inside his house and Jason and Rashon drove away.

¶ 8    Both Trina and Keith agreed that when the police arrived a few minutes later, defendant was taken into custody while the police obtained consent from defendant's wife to search the house. The officers found a black rifle inside defendant's house which they showed to Trina, but she denied that it was the firearm that defendant had pointed at the group. The police returned to the house and located a brown bolt action rifle, which Trina confirmed was the weapon defendant had held during the incident.

¶ 9    Defendant was charged with two counts of hate crime (720 ILCS 5/12-7.1 (West 2016)) against Trina and Keith Davis. Two judges presided over defendant's trial. Judge Allen Murphy presided over the first day of the trial, in which Trina and Keith Davis testified as witnesses. The

trial was then continued to a later date. In the intervening time Judge Murphy passed away. The matter was transferred to Judge Patrick Coughlin. With the parties' consent, Judge Coughlin read through the transcript of the testimony of Trina and Keith Davis rather than restarting the trial. He then heard the testimony of a third witness, Detective Dimitroff, before rendering a verdict. Judge Coughlin found defendant guilty of both counts of hate crime.

¶ 10    Defendant filed a motion for new trial, which was denied. Defendant was sentenced to 30 months of probation concurrent on both counts, along with 200 hours of community service. A timely appeal followed.[1]  Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); Ill. S. Ct. R. 606 (eff. Dec. 7, 2023).

¶ 11                                     ANALYSIS

¶ 12    Defendant argues that the State failed to prove beyond a reasonable doubt that defendant did not act in self-defense, and that we should therefore reverse his hate crime convictions. The parties dispute the appropriate standard of review, but because the circuit court's judgment was based in part on live testimony, and included credibility determinations, we review the circuit court's judgment under the sufficiency of the evidence standard. *People v. Span*, 2011 IL App (1st) 083037, ¶ 27. The question is "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found beyond a reasonable doubt that the defendant did not act in self-defense." *People v. Cruz*, 2021 IL App (1st) 190132, ¶ 42. The defendant's conviction is reversed only if "the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of defendant's guilt." *People v. Jones*, 404 Ill. App. 3d 734, 742 (2010).

---

[1]    On November 10, 2022, the Illinois Supreme Court entered a supervisory order instructing this court to treat defendant's notice of appeal as timely.

¶ 13    Defendant argues that the State failed to prove his guilt beyond a reasonable doubt because it failed to disprove that he acted in self-defense. The State argues that defendant forfeited his self-defense claim because he failed to raise it before the circuit court. *People v. Bardsley*, 2017 IL App (2d) 150209, ¶ 17. "The typical method for alerting the State of a defense involves the answer to discovery." *People v. Shepherd*, 2020 IL App (1st) 172706, ¶ 17. In his supplemental answer to discovery, defendant stated that he "may also raise the affirmative defense of justifiable use of force as indicated in 720 ILCS 5/7-1, 5/7-2, and 5/7-3," which put the State on notice that defendant was arguing self-defense at trial. Additionally, defendant's counsel raised the issue of self-defense during his closing argument: "Presumably Jason had a gun because [Keith] Davis said he didn't shoot. Would it have been unreasonable for Mr. Ratter to have his own rifle? Were they the aggressors, Judge? They haven't proved that beyond a reasonable doubt if someone is walking towards you." Defendant also explicitly raised the issue of self-defense in his motion for a new trial. *Cf. Shepherd*, 2020 IL App (1st) 172706, ¶ 18 (leaving open the possibility that explicitly raising an affirmative defense in closing argument or in a motion for a new trial would be sufficient for defendant to raise the affirmative defense). Against this backdrop, the self-defense claim was not forfeited.

¶ 14    To be convicted of committing hate crime, the State must prove that defendant committed aggravated assault "by reason of the actual or perceived race" of Trina and Keith Davis. 720 ILCS 5/12-7.1(a) (West 2016). An aggravated assault occurs when, without lawful authority, a person "knowingly engages in conduct which places another in reasonable apprehension of receiving a battery" through the use of a deadly weapon. 720 ILCS 5/12-1(a) (West 2016); 720 ILCS 5/12-2(c)(1) (West 2016). "Self-defense is an affirmative defense, and once it is raised, the State has

the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense." *People v. Gray*, 2017 IL 120958, ¶ 50. The elements of self-defense include:

> "(1) a threat of unlawful force against the defendant, (2) that the defendant was not the aggressor, (3) that the danger of harm was imminent, (4) that the defendant's use of force was necessary, (5) that the defendant actually and subjectively believed there was a danger that required him to use the force that he used, and (6) that the defendant's belief was objectively reasonable." *Cruz*, 2021 IL App (1st) 190132, ¶ 45; 720 ILCS 5/7-1 (West 2016).

If the State proves beyond a reasonable doubt that at least one of these elements has not been satisfied, then a defendant's claim of self-defense fails. *Gray*, 2017 IL 120958, ¶ 50.

¶ 15    Defendant argues that there was a threat of unlawful force against him because Jason threatened him with a gun. This argument is based on a single line of testimony in which Keith Davis, when asked how the argument between Jason and defendant ended, stated that "Jason never shot."

> "KEITH DAVIS: To be honest I'm not sure how it ended because I couldn't hear what they were saying or the words they were saying. I was trying to make sure me and my mom were safe. All I know Jason never shot. I know he got back in his car. [Defendant] went in his house. My mom called the police. The police came, and that's what it was.
>
> THE COURT: Madam Court Reporter, will you please read back that last answer.
>
> (Record read as requested.)
>
> THE COURT: You said, "Jason never shot." Did Jason have a gun?

KEITH DAVIS: That's not what I said.

THE COURT: She just read it back.

KEITH DAVIS: That's not what I said.

THE COURT: Go ahead, I heard it too."

When asked to clarify his statement on redirect, Keith Davis stated "I never said anything about shot because nobody shot nothing."

¶ 16    Despite Keith Davis's statement that "Jason never shot," there is no other testimony or evidence that Jason was armed or that he threatened defendant with a gun. Defendant's argument that Jason threatened defendant with a gun is not supported by the evidence presented at trial. It is contradicted by both Trina and Keith Davis's testimony that no one besides defendant had a weapon and that no one had threatened defendant before he brought his rifle out. The State proved beyond a reasonable doubt that no one threatened defendant with unlawful force.

¶ 17    The State also disproved the other five elements of defendant's self-defense claim. The testimony of Trina and Keith Davis shows that defendant was the aggressor, because he initiated the confrontation by taking photographs and shouting racial slurs, and because there is no evidence that anyone in the group threatened defendant. Although defendant argues that Jason "escalated" the situation by walking towards defendant while continuing to argue with him, this did not make Jason the aggressor, given that there is no evidence that Jason was armed or threatened defendant. Since there was no threat of unlawful force against defendant, there could not have been an imminent danger of harm. Additionally, Jason was standing in the street when he was arguing with defendant, while defendant was standing on the porch on his property which was surrounded by a chain link fence. Defendant's use of force could not have been necessary, nor could defendant

have had an objectively reasonable belief that there was a danger that required him to use force. Finally, there was no evidence that defendant even subjectively believed that there was a danger that required him to use force. Given that the State has disproven at least one element of self-defense beyond a reasonable doubt, defendant's self-defense claim fails.

¶ 18    Additionally, even if Jason did have a weapon and did threaten defendant with it, defendant is permitted to use force in self-defense only against the individual that is threatening him. 720 ILCS 5/7-1(a) ("[a] person is justified in the use of force against *another* when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against *such other's* imminent use of unlawful force." (Emphasis added.)). Defendant could have no claim to self-defense against Trina and Keith Davis, as there is no evidence whatsoever that Trina and Keith Davis were armed or that they threatened defendant. Defendant's claim of self-defense fails as a matter of law.

¶ 19    In finding defendant guilty of two counts of hate crime and denying his motion for a new trial, the circuit court concluded that the State had proven beyond a reasonable doubt that defendant had committed aggravated assault against the victims and that he had done so due to the victims' race. The court found the testimony of Trina and Keith Davis to be credible despite some inconsistencies between their two accounts of the events of that evening. The court held that the defendant was the aggressor and that "there was no testimony with regard to anyone else having a gun or any evidence of self-defense." The circuit court acknowledged that Keith Davis had said that "Jason never shot," but stated that "that is a true statement because there's nowhere it says Jason ever had a gun, there's no testimony that anyone said I saw him with a gun or I was in fear for my safety." Viewing all of the evidence in the light most favorable to the State, a rational trier

of fact could have found beyond a reasonable doubt that the defendant did not act in self-defense and that defendant committed aggravated assault against Trina and Keith Davis because of their race. Therefore, the circuit court did not err in finding defendant guilty of two counts of hate crime.

¶ 20                               CONCLUSION

¶ 21    The judgment of the circuit court of Cook County is affirmed.

¶ 22    Affirmed.