2023 IL App (1st) 221613-U

SIXTH DIVISION

December 15, 2023

No. 1-22-1613

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22118630001 |
| LAMAR JONES, | ) ) | Honorable Peter Gonzalez, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice Tailor concurred in the judgment.

**ORDER**

¶ 1     *Held:*     We reverse defendant's conviction for carrying a firearm in a prohibited area because the State failed to disprove a statutory affirmative defense beyond a reasonable doubt.

¶ 2    After a bench trial, defendant Lamar Jones was found guilty of carrying a firearm in a prohibited area (430 ILCS 66/65 (West Supp. 2021)) and sentenced to three months' supervision. He appeals, claiming the evidence was insufficient to sustain the verdict. We reverse.

¶ 3                              BACKGROUND

¶ 4    Jones was arrested on June 11, 2022, and charged with carrying a firearm in a prohibited area in violation of 430 ILCS 66/65 (West Supp. 2021).

¶ 5    At Jones's bench trial on September 6, 2022, defense counsel, in his opening statement, summarized a statutory section as generally maintaining that a "licensee shall not be in violation of the section while he's traveling along the public right-of-way, that touches across the premises."

¶ 6    Chicago police officer Coyle[1] testified that he had worked as a police officer for ten years at the time of his testimony. On June 11, 2022, he was on routine patrol near the 4700 block of South Wood Street in Chicago at the "Back of the Yards Festival." The prosecutor asked if the festival required a permit, to which defense counsel objected on the basis of foundation. The circuit court overruled the objection, and Coyle responded, "Yes. Permits are required for this festival," and the city was the issuing authority. Coyle stated that the street festival's east-west "main thoroughfare" was 47th Street, which was blocked off and closed to traffic from Paulina Street to Damen Avenue. The entrances and exits were "erected [on] a chain link fenc[e]." On the fencing, signs were posted, including one indicating firearms were not permitted in the festival. Every festival entrance and exit had these signs, and Coyle did not believe someone could enter the festival without seeing them.

¶ 7    At around 4:40 p.m., Coyle noticed "an individual walking eastbound on 47th Street with a large bulge on the right side of his hip." Coyle identified Jones in court as this individual. Coyle

---

[1] The report of proceedings does not contain Coyle's first name.

alerted other officers regarding Jones, then "detained" him for "investigation," during which officers recovered a firearm from a holster on Jones's right hip. Jones stated he was traveling home to an address on the 5100 block of South Marshfield Avenue in Chicago. Coyle testified that this location was "multiple blocks away" from the festival, and Jones did not have to walk through the festival to reach it. Jones claimed that he had to travel on 47th Street because he had been shot at previously on another route home.

¶ 8    Coyle testified that Jones had both a Firearm Owner's Identification (FOID) card and a concealed carry license (CCL) in his wallet and that Jones verbally confirmed the cards were valid, testimony to which defense counsel unsuccessfully objected on the basis of foundation and best evidence. Coyle also confirmed the CCL was current based on the card's date.

¶ 9    Coyle further testified that he wore a body camera on June 11, 2022, which recorded the interaction with Jones. The State published portions of the recording to the court after Coyle confirmed the recording was accurate. The recording, included in the record on appeal, depicts a man in a red shirt and black face mask walk in the middle of the street past a group of Chicago police officers. Coyle testified this man was Jones. At 2:00, officers approach, handcuff Jones, and remove an item from his pocket. One officer asks if Jones saw a sign. A conversation between an officer and Jones occurs at 3:04 to 3:24; Coyle testified that Jones says he has a permit during this exchange, but this is not clearly audible on the recording. Between 5:34 and 5:43, Jones can be heard saying to an officer, "I didn't see it." Between 9:19 and 10:06, Jones says he had to walk past the event to reach his home because of a previous incident in which someone shot at him. Another portion of the recording shows a fence with multiple signs posted on it, including one depicting a firearm in a circle with a line through it. Coyle confirmed this sign accurately depicted the "Firearms Prohibited" signs posted on "[e]very single" festival entrance.

3

¶ 10    On cross-examination, Coyle testified that he never saw the festival's permit. He did not see Jones enter the festival. On non-festival days, the street on which Jones walked when Coyle saw and stopped him was a public street, and it remained open to the public during the festival "with the exception that [people] have to follow the rules of the festival."

¶ 11    The State rested, and Jones moved for a directed finding, advancing multiple arguments. He first contended the State failed to show he was a "licensee" as required by the statute. Jones further argued the State had introduced insufficient evidence regarding the festival's permit because "[w]e can't presume that a permit issued *** So the permit needs to be put into evidence." Finally, Jones argued he was permitted to walk through the area with his firearm provided it was necessary to reach his home. The State responded that the testimony about Jones's CCL, along with his admission regarding his licenses, constituted evidence he was a "licensee," and Coyle's testimony on the permit and the location of Jones's home satisfied the statutory requirements for those issues. The circuit court denied the motion.

¶ 12    Jones testified in his case-in-chief that he was walking home from his mother's house, which is located near the intersection of 46h Street and Wood Street, when police officers stopped him. He admitted that he entered the festival area before the stop, but he did not see signs indicating firearms were prohibited when he entered. The officers took his wallet and removed his CCL. Jones told the officers he had "an incident report," and walked through the festival because he was afraid to use another route. Officers asked him if he saw [no firearm] signs, and he responded negatively.

¶ 13    On cross-examination, Jones testified that he had a CCL, which he had to complete training to procure. He nodded when police officers asked him this on the scene, but did not affirmatively state it. Jones responded "Yes," to the question, "Despite your training and knowledge of the

4

conceal carry laws in this state, you decided to knowingly possess a firearm at an event where such possession was prohibited, yes or no." On redirect, Jones clarified that he did not know that carrying firearms was prohibited in the area where the officers stopped him.

¶ 14    At closing arguments, defense counsel contended that the State failed to establish that (1) Jones "had a valid CCL or a FOID card," (2) the festival had a permit issued by a local government, or (3) Jones was not walking through the area to access his residence because other routes were dangerous. Counsel also contended the State failed to prove the signs met statutory requirements. The prosecutor argued that a fear for one's safety is not an exception to the statute, and continued that Jones's "credibility is entirely at issue in this case and [his account] just doesn't check out."

¶ 15    The circuit court found Jones guilty of carrying a firearm in a prohibited area and sentenced him to three month's supervision. In so finding, the court noted that Jones admitted he had a valid CCL, Coyle could validly testify regarding the permit situation, which was supported by the fencing, signs and blocked streets, and the testimony and body camera footage suggested the appropriate signs were present. The court also noted it found Jones incredible regarding whether he needed to pass through the festival to reach his home for safety reasons.

¶ 16    Jones filed a motion to reconsider and for a new trial, alleging the evidence was insufficient to prove him guilty beyond a reasonable doubt because the State failed to establish that (1) Jones was not crossing the area while traveling on a public right of way (hereinafter "crossing exception"); (2) the signs at the festival barring firearms did not meet statutory requirements; (3) the festival was one that required a permit (and the circuit court should not have permitted Coyle's testimony on this point because he did not have personal knowledge, making his testimony on the issue hearsay); (4) Jones was a "licensee" per the statute; (5) Jones did not have to walk through the festival to reach his home; and (6) Jones acted knowingly.

¶ 17   On October 14, 2022, the circuit court denied Jones's motion to reconsider and for a new trial. During argument on the motion, defense counsel specifically argued the crossing exception issue, but the State did not respond to the argument, and the court made no express ruling on it. This appeal followed.

¶ 18                                JURISDICTION

¶ 19   This court has jurisdiction pursuant to Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. Sept. 18, 2023) because the circuit court denied Jones's motion to reconsider and for a new trial on October 14, 2022, and Jones filed his notice of appeal that same day.

¶ 20                                 ANALYSIS

¶ 21   On appeal, Jones challenges the sufficiency of the evidence on six grounds, claiming the State failed to establish that: (1) the crossing exception did not apply; (2) the festival's signs conformed with the statutory requirements; (3) the festival qualified as one for which a permit was required; (4) Jones had a CCL, and was thus a "licensee" per the statute; (5) Jones did not have to travel through the festival to reach his residence; and (6) Jones acted knowingly.

¶ 22   When a defendant claims on appeal that the State's evidence was insufficient, the reviewing court will construe the evidence in the light most favorable to the prosecution, and determine if any rational factfinder could have found the defendant guilty beyond a reasonable doubt. *People v. Jones*, 2023 IL 127810, ¶ 28. The reviewing court will not substitute its judgment for that of the factfinder on matters of witness credibility or evidentiary weight. *Id.* Reversal is inappropriate "unless the evidence is so unreasonable, improbable, or unsatisfactory" that it justifies "a reasonable doubt of the defendant's guilt." *Id.*

¶ 23   A criminal defendant has the right to have the State prove each element of an offense beyond a reasonable doubt. *People v. Murray*, 2019 IL 123289, ¶ 28. Additionally, when a defendant raises

an affirmative defense, the State must also disprove that defense beyond a reasonable doubt. *People v. Bardsley*, 2017 IL App (2d) 150209, ¶ 17 (citing *People v. Jeffries*, 164 Ill. 2d 104, 127 (1995)).

¶ 24   Jones was convicted of carrying a firearm in a prohibited area under the Firearm Concealed Carry Act. 430 ILCS 66/65 (West Supp. 2021). To establish this charge, the State had to prove Jones was a licensee under the act, and he knowingly carried a firearm while in the prohibited area. 430 ILCS 66/65(a), (a)(10) (West Supp. 2021). The prohibited area at issue here is defined as, "Any public gathering or special event conducted on property open to the public that requires the issuance of a permit from the unit of local government, provided this prohibition shall not apply to a licensee who must walk through a public gathering in order to access his or her residence, place of business, or vehicle." 430 ILCS 66/65(a)(10) (West Supp. 2021). In section (c), the statute further provides, in relevant part: "A licensee shall not be in violation of this Section while he or she is traveling along a public right of way that touches or crosses any of the premises under subsection (a) *** if the concealed firearm is carried on his or her person in accordance with the provisions of this Act." 430 ILCS 66/65(c) (West Supp. 2021). Finally, the statute requires that, "Signs stating the that the carrying of firearms is prohibited shall be clearly and conspicuously posted at the entrance (of the above-listed prohibited areas). *** Signs shall be of a uniform design *** and shall be 4 inches by 6 inches in size." 430 ILCS 66/65(d) (West Supp. 2021).

¶ 25   We will first consider Jones's argument that the State failed to prove beyond a reasonable doubt that he was not traveling on a public right of way that crossed the festival per 430 ILCS 66/65(c) (West Supp. 2021).

¶ 26   Before turning to the evidence on this point, we must resolve the parties' dispute over whether this issue is properly before this court. The State contends Jones forfeited this argument

7

because it is an affirmative defense, and he did not raise it in a pleading or during trial, and thus cannot now raise it on appeal. In support, the State emphasizes that defense counsel did not mention the crossing exception in his motion for a directed verdict or closing argument.

¶ 27    Jones responds that whether the crossing exception applies is an element of the charge, and thus it is not subject to forfeiture, as a defendant may argue the State's evidence was insufficient to prove each element beyond a reasonable doubt at any time. See *People v. Carter*, 2021 IL 125954, ¶ 41. He further maintains that even if the crossing exception is an affirmative defense, he sufficiently raised it at trial such that the State had the burden to disprove it beyond a reasonable doubt, which it failed to do.

¶ 28    An exception is an element of a statutory offense when the exception appears in the "body" of the offense. See *People v. Laubscher*, 183 Ill. 2d 330, 335 (1998). The *Laubscher* court considered the AUUW exception for carrying on one's own property in explaining this proposition, with the statutory language at issue reading: "(a) A person commits the offense of unlawful use of weapons when he knowingly: *** (4) Carries or possesses * * * concealed on or about his person *except when on his land or in his own abode or fixed place of business* any pistol, revolver, stun gun or taser or other firearm * * *." (Emphasis added.) 720 ILCS 5/24-1(a)(4) (West 1994). The *Laubscher* court held that based on this language, the exception was so intrinsic to the statutory language defining the offense that it had to be understood as an element of the offense. *Laubscher*, 183 Ill. 2d at 335.

¶ 29    An exception may still be an affirmative defense even if listed in the same statute, however, because while "an exception may appear within the statutory definition of an offense, it is part of the body of the offense only if it is so incorporated with the language of the definition that the elements of the offense cannot be accurately described without reference to the exception."

8

(Internal quotations omitted.) *People v. McPeak*, 2012 IL App (2d) 110557, ¶ 6. Conversely, "if the exception merely withdraws certain acts or certain persons from the operation of the statute, the exception is a matter of defense, and its position in the statute makes no difference." (Internal quotations omitted.) *Id.*; see also *People v. Tolbert*, 2016 IL 117846, ¶¶ 15-17.

¶ 30   Where an exception is an affirmative defense, a defendant must raise it at trial or risk forfeiting the defense. *People v. Shepherd*, 2020 IL App (1st) 172706, ¶ 17. Typically, a defendant should raise an affirmative defense in discovery or in a pleading before trial, but a defendant may also raise it via the evidence at trial. *People v. Wiggen*, 2021 IL App (3d) 180486, ¶ 18. The core consideration is whether the defendant placed the State on notice that it must disprove the elements of the affirmative defense while the trial is ongoing, providing the State the opportunity to do so. *Shepherd*, 2020 IL App (1st) 172706, ¶¶ 16-18 (citing *Bardsley*, 2017 IL App (2d) 150209, ¶¶ 17, 22).

¶ 31   Whether a statutory exception is an element or affirmative defense is an issue of statutory interpretation.[2] The purpose of statutory interpretation is to give effect to the legislative intent. *People v. Stewart*, 2022 IL 126116, ¶ 13. The best indication of legislative intent is the statutory text itself, "given its plain and ordinary meaning." *Id.* Where the language of a statute is clear and unambiguous, a reviewing court must apply the statute as written. *Id.*

¶ 32   We hold the statutory language is clear and unambiguous that the crossing exception is an affirmative defense, not an element. The crossing exception is not so intrinsic to the language of the charge itself such that one could not describe the elements without including it. *McPeak*, 2012 IL App (2d) 110557, ¶ 6. Instead, the elements of the crime are straightforward, and can certainly

---

[2] The circuit court did not address the crossing exception, but had it done so, we note that we would not have been bound by its interpretation because appellate courts review matters of statutory interpretation *de novo*. See *Tolbert*, 2016 IL 117846, ¶ 12.

be described without reference to the crossing exception—a defendant violates the section if, as a licensee, he knowingly carries a firearm while on the premises of an event requiring a permit. 430 ILCS 66/65(a)(10) (West Supp. 2021); *McPeak*, 2012 IL App (2d) 110557, ¶ 6. The crossing exception then removes certain acts from this bar—specifically, the act of traveling on a public right of way that touches or crosses the prohibited area. 430 ILCS 66/65(c) (West Supp. 2021). This language and structure makes the statute clear on its face that the legislature intended to make the exception an affirmative defense. See *McPeak*, 2012 IL App (2d) 110557, ¶ 6.

¶ 33    We disagree with the State, however, that Jones failed to raise this affirmative defense. Defense counsel directly invoked the crossing exception in his opening statement. Coyle testified that the only conduct he saw Jones perform was walking on the street, and defense counsel then elicited testimony from Coyle that the street was both generally open to the public in normal circumstances and still open to the public during the festival. While there is no set method a defendant must use to raise an affirmative defense, Illinois law maintains that it can be done both before trial and via the evidence introduced during trial. See *Wiggen*, 2021 IL App (3d) 180486, ¶ 18. Based on this understanding, Jones gave the State more than sufficient notice by directly referencing the exception in the opening statement *and* eliciting testimony to support the argument. This placed the State on notice that it now had the burden to prove beyond a reasonable doubt that the crossing exception did not apply. *Bardsley*, 2017 IL App (2d) 150209, ¶ 17. Accordingly, it is of no consequence that defense counsel did not then specifically argue the crossing exception in his directed verdict motion or closing argument, as disproving the crossing exception had become part of the State's sufficiency of the evidence obligations.

¶ 34    Having found Jones sufficiently asserted the crossing exception as an affirmative defense, we may consider the merits of his argument that the State's evidence was insufficient to prove the

crossing exception did not apply beyond a reasonable doubt. For the purpose of examining this exception, we presume (without finding) that the State's evidence was sufficient to establish the other elements of the charge.

¶ 35    The exception states that a licensee is not in violation of the statute if he possesses the firearm while on "a public right of way" that crosses the relevant protected area, here the festival. 430 ILCS 66/65(c) (West Supp. 2021). The Illinois Highway Code defines a "right-of-way" as the "land, or interest therein, acquired for or devoted to a highway." 605 ILCS 5/2-217 (West 2020). A highway is, "any public way for vehicular travel," and "shared-use paths for nonvehicular public travel, sidewalks *** and all other structures and appurtenances necessary or convenient for vehicular traffic," and may be called a "street" in a "municipal" location. 605 ILCS 5/2-202 (West Supp. 2021).

¶ 36    Coyle testified that 47th Street was generally open to the public, and remained open to the public during the festival, subject to the statutory restrictions. The bodycam recording depicts Jones walking down the middle of the street while the festival is ongoing. Both Coyle and Jones testified consistently with the video.

¶ 37    Based on this record, no rational factfinder could conclude that the State proved the crossing exception did not apply beyond a reasonable doubt. There is nothing in the record from which we could conclude 47th Street is not a public right of way, and it is undisputed that Jones's conduct consisted only of walking on 47th Street. Moreover, his testimony that he was walking across the festival to go home, and thus not spending time at the festival or engaging in any behavior that would deviate from only traveling on 47th Street to cross the festival, was uncontested. The evidence shows Jones did not stop, interact with anyone, visit a booth, buy food or shop; he just crossed the festival by walking on the street. Finally, there was no evidence whatsoever that Jones

was not carrying his concealed firearm according to statutory requirements. It follows that the record lacks any evidence, let alone sufficient evidence, that the State disproved the crossing exception beyond a reasonable doubt, making reversal for insufficient evidence appropriate. *Bardsley*, 2017 IL App (2d) 150209, ¶ 17.

¶ 38                                    CONCLUSION

¶ 39    Jones successfully raised the crossing exception as an affirmative defense, and the State then failed to disprove it beyond a reasonable doubt. Accordingly, the evidence was insufficient to sustain the verdict.

¶ 40    Reversed.