2025 IL App (2d) 240242-U
No. 2-24-0242
Order filed April 10, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-1856 |
| ANTHONY M. TOMALA, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Defendant forfeited his insanity defense by not raising it until closing arguments at his discharge hearing. (2) Trial counsel was ineffective for failing to investigate and timely raise an insanity defense where there was compelling evidence that, at the time of offenses, defendant had a mental illness that rendered him incapable of appreciating the criminality of his conduct.

¶ 2    Defendant, Anthony M. Tomala, appeals from a judgment, entered after a discharge hearing (see 725 ILCS 5/104-23 (West 2022)), finding him "not not guilty" of four charges related to his attack on his father, John Tomala, and releasing him to John's custody. On appeal, defendant contends that (1) the trial court erred in refusing to find him not guilty by reason of insanity and,

alternatively, (2) his trial counsel was ineffective for failing to request a sanity evaluation and raise an insanity defense at the discharge hearing. We hold that the first contention is forfeited, but we agree with the second contention. Therefore, we reverse and remand for a new discharge hearing.

¶ 3                                    I. BACKGROUND

¶ 4       On December 1, 2022, the State charged defendant with (1) aggravated domestic battery (great bodily harm) (720 ILCS 5/12-3.3(a) (West 2020)); (2) aggravated battery (great bodily harm) (*id.* § 12-3.05(a)(1)); (3) aggravated battery (bodily harm) of a victim 60 years or older (*id.* § 12-3.05(d)(1)); (4) aggravated battery (insulting or provoking physical contact) of a victim 60 years or older (*id.*); (5) domestic battery (bodily harm) (*id.* § 12-3.2(a)(1)); and (6) domestic battery (insulting or provoking physical contact) (*id.* § 12-3.2(a)(2)). All offenses were allegedly committed on October 4, 2022. The first two counts alleged that defendant "struck and/or kicked" John, thereby causing his ribs "to be fractured and/or break."

¶ 5       On December 7, 2022, the trial court ordered the Kane County Diagnostic Center (Center) to evaluate defendant for his fitness to stand trial. At a remote hearing on December 22, 2022, the parties stipulated to the findings in the Center's report dated December 19, 2022.

¶ 6       In the report, the examining psychologist, Dr. Ellis O'Connor, stated as follows. On December 16, 2022, she interviewed defendant at the jail. Before the interview, jail officers told her that defendant "was consistently naked during his detainment" and recurrently bathed himself in water from his toilet and splashed the water about his cell. O'Connor's report described their short meeting:

> "[Defendant] did not make eye contact, and he appeared to respond to internal stimuli. He
>
> constantly repeated, 'What the f*** is going on,' in a rhythmic and pressured manner. He
>
> did not pause in his speech as I approached and attempted to introduce the nature and

purposes of this evaluation. [Defendant] also did not respond to me when I verbalized his name, my name, and the reason for my visit. Rather, he did not demonstrate awareness of my presence, and he continued to state, 'What the f*** is going on.' Due to [defendant's] lack of responsiveness and inability to engage in coherent discourse, the evaluation session was ended in approximately three minutes."

¶ 7     O'Connor's report noted that, previously, on November 9, 2022, defendant completed a mental health evaluation in which he reported prior diagnoses of bipolar disorder and posttraumatic stress disorder. Upon his arrival in jail, he was placed on suicide watch because he had said that he wanted to die. In November and December 2022, defendant engaged in "disorganized and bizarre behaviors," including defecating on his dinner tray, removing his clothing, shouting that staff people were trying to kill him, banging his head on a wall, and punching himself in the head. Defendant "presented with psychosis and suicidal statements" and was observed naked in his cell with his head in the toilet. A jail psychiatrist opined that defendant was " 'clearly psychotic.' " Defendant recurrently refused the antipsychotic drugs that he was prescribed.

¶ 8     O'Connor diagnosed defendant with "[s]chizophrenia, currently in acute episode." She opined to a reasonable degree of psychological certainty that defendant did not currently meet the criteria for fitness to stand trial. O'Connor stated that defendant's symptoms had previously been mitigated through medication. Thus, she concluded that defendant likely could be restored to fitness within the one-year statutory period (see 725 ILCS 5/104-17(e) (West 2022)), "given consistent participation in the appropriate psychological and psychiatric treatments." O'Connor opined that, given defendant's psychosis, inpatient treatment was the least restrictive appropriate treatment option.

¶ 9       After the hearing, the trial court found, based on O'Connor's report, that defendant was currently unfit to stand trial. The court remanded defendant for treatment.

¶ 10      On February 1, 2023, defendant was admitted to Chester Mental Health Center. On March 6, 2023, Dr. Aqeel Khan evaluated defendant and filed his report the same day. Khan observed that, when he met with defendant, he was in "five-point full leather restraints for aggression towards staff." Defendant was "floridly psychotic presenting with disorganized nonsensical speech." Despite taking his prescribed psychotropic medicine, defendant had made "minimal progress in regard to his behavior and fitness restoration." Khan opined that defendant was unfit to stand trial but, with inpatient treatment, might obtain fitness within one year.

¶ 11      On April 6, 2023, the trial court found that defendant remained unfit for trial. A 90-day fitness progress report by Khan, dated April 17, 2023, stated that defendant remained medication-compliant and made some progress toward fitness restoration. However, Khan concluded that defendant remained unfit for trial, lacked insight into the severity of his mental illness, and needed further inpatient treatment.

¶ 12      In a May 9, 2023, report, Khan reached conclusions like those in his April 17 report. On August 2, 2023, the trial court ordered defendant to be transferred to Elgin Mental Health Center (Elgin).

¶ 13      In a report dated September 27, 2023, defendant's treatment team at Elgin stated that he was taking his medication as prescribed, attending treatment groups, and generally behaving peacefully. However, he had difficulty remembering and understanding the charges against him and had "some residual symptoms of psychosis." He reported hearing " 'voices' " inside his head two or three weeks prior but had not experienced any since. The treatment team opined that defendant was still unfit to stand trial, but they anticipated that he would achieve fitness within

one year. On September 29, 2023, the trial court found that defendant remained unfit to stand trial. The court set the case for a status hearing following the next treatment report.

¶ 14    In a report dated December 13, 2023, defendant's treatment team stated that defendant was taking his prescribed medication and attending treatment groups. Also, defendant reported that he had not had auditory hallucinations in two or three months. He was progressing slowly in understanding the charges against him. However, based on his incomplete understanding of his legal situation, the team opined that he remained unfit to stand trial. The report noted that defendant was "approaching [u]nfit at one year."

¶ 15    On January 4, 2024, the trial court set the matter for a discharge hearing because defendant was still unfit at the end of the one-year statutory period. On February 23, 2004, the trial court held the discharge hearing. We summarize the proceedings.

¶ 16    The State's only witness was John, who testified as follows. On October 4, 2022, he was 78 years old. That day, he and defendant were in the living room of John's house. They began to argue. Defendant started to say "nutty stuff." He "[was not] himself" but was "[l]ike a different person." Defendant "started a fight" by throwing punches at John. Defendant punched John in his temple and mouth, knocking out a tooth. During this physical assault, defendant was "talking gibberish." Defendant also kicked John in the back; John was not injured but had "soreness" in his back. He later went to a hospital. To his knowledge, he was not diagnosed with a broken rib.

¶ 17    John testified that defendant had been diagnosed with schizophrenia and had "had it for years." Defendant had been prescribed medicine for his condition. Asked whether defendant was taking any of his medicine on October 4, 2022, John testified, "I don't think so." John usually watched defendant, and, "for a week before [October 4, 2022], [defendant] wasn't taking his medicine." On that day, defendant underwent a "[p]ersonality change." When defendant took his

medicine, he behaved like "a good kid," but on October 4, 2022, he was "a person [John] [did not] recognize."

¶ 18    On cross-examination, John testified that defendant, who was currently 37 years old, had been living with him since birth. When defendant was in high school, he was diagnosed with schizophrenia. John always watched defendant to make sure that he was taking his medicine. When defendant took his medicine, he had a "good demeanor." Before October 4, 2022, defendant and John had never had an argument turn physical. During the fight, defendant was saying "[m]ostly gibberish," accusing John of not caring about him and "stuff like that." Defendant "said stuff that a normal person couldn't really understand." In the preceding week, during which defendant did not take his medication, his demeanor changed to the point where, on October 4, 2022, John could not really "recognize[ ]" him.

¶ 19    John testified that defendant was currently being medicated and that he saw defendant twice weekly. Defendant was now more like he was before October 2022, and John had had no "issues" in their meetings. John no longer feared for his safety around defendant.

¶ 20    The State rested. Defendant moved for directed findings on all counts. The trial court granted the motion as to the first two counts only, explaining that there was no evidence that defendant caused John any rib injuries. Defendant put on no evidence.

¶ 21    In closing argument, the State contended that it had presented sufficient evidence to convict defendant of the four remaining counts. Thus, it requested a finding of not not guilty.

¶ 22    Defense counsel began his closing argument as follows:

> "As to counts 3, 4, 5, and 6 that remain, I would be asking for you to enter a finding of not guilty.

Obviously, Judge, you can find him not not guilty, you can find him guilty, you can find him not guilty by reason of insanity.

I'm asking for you to find him not guilty. All four of the remaining counts, Judge, require a knowing element. They all have to be done knowingly by [defendant]."

¶ 23    Counsel argued that the evidence was insufficient to prove knowledge, because it showed that, by failing to remain medicated, defendant became "like a different person." Counsel pointed out that, according to John, he and defendant had had prior arguments but no physical altercations. Thus, counsel argued, there was "no evidence that [defendant] understood the consequences of his actions, that he knew that what he was doing was getting into a fight." Counsel continued:

"So I'm asking, Judge, that you find [defendant] not guilty based on the fact that the State has failed to present evidence that [he] knowingly committed these offenses.

In the alternative, Judge, should you not make that finding, I would ask for a finding of not guilty by reason of insanity. He was clearly under the effects of a mental illness based on his father's testimony. He was unmedicated at the time and not acting as himself.

***

THE COURT: *** Did you plead insanity on this at all?

MR. McCLURE [(DEFENSE COUNSEL)]: I did not, Judge. I don't know that that happens in a fitness hearing.

THE COURT: I'm not sure it does either, I just wanted that answer. Thank you.

MS. STOUT [(ASSISTANT STATE'S ATTORNEY)]: Judge, *** there has to be some sort of finding testimony, some sort of expert testifying as it relates to the insanity whether that be a psychologist or something as to the mental—the mental health of this defendant, Judge.

And I think that would come subsequent to sort of the finding of a not not guilty and then at that point, Judge, like in a jury trial, if the defense is not guilty by reason of insanity, the State first has to still show that the defendant committed the offense *** and then it would sort of shift to the defendant to prove that there was this insanity.

Judge, we don't have that here today. We don't have that testimony as it relates to anything in regards to a psychologist's testimony, any of that indication, Judge."

¶ 24 The State argued further that it had produced legally sufficient evidence that defendant had acted knowingly.

¶ 25 The trial court found that the State had met its burden on all the remaining charges. It then said: "I find [defendant] not not guilty of those charges going forward." The court did not mention insanity.

¶ 26 On March 4, 2024, after a status hearing and the trial court's off-the-record conversation with John, the court found that defendant needed no further treatment and discharged him to John's custody. Defendant timely appealed.

¶ 27                                      II. ANALYSIS

¶ 28 On appeal, defendant argues that (1) the trial court erred in declining to find him not guilty by reason of insanity (see 720 ILCS 5/6-2 (West 2022)) of all the remaining charges and, alternatively, (2) his trial counsel was ineffective for failing to request a sanity evaluation, timely raise an insanity defense, and support it with evidence. For the reasons below, we find defendant's first argument forfeited but accept his second argument.

¶ 29 To defendant's first argument, the State responds that (1) defendant forfeited the affirmative defense of insanity by failing to raise it until closing arguments at the discharge hearing

and, alternatively, (2) defendant did not establish that he was insane at the time of the offenses. We agree with the State's forfeiture argument and do not reach its alternative argument.

¶ 30   We set out the pertinent law. "A discharge hearing is not a criminal proceeding." *People v. Mayo*, 2017 IL App (2d) 150390, ¶ 3. "A discharge hearing takes place only after a defendant has been found unfit to stand trial, and it is a proceeding to determine only whether to enter a judgment of acquittal, not to make a determination of guilt." *Id.* The standard of proof at a discharge hearing is the same as required for a conviction. *Id.* However, the question of guilt is deferred until the defendant is found fit to stand trial. *Id.* The trial court can make one of three findings in a discharge hearing. *People v. Manns*, 373 Ill. App. 3d 232, 238 (2007); see 725 ILCS 5/104-25(a)-(c) (West 2022). First, the court can find that the State proved beyond a reasonable doubt that the defendant committed the alleged offense. *Manns*, 373 Ill. App. 3d at 238. In that situation, the court does not enter a criminal conviction but, rather, a finding of " 'not not guilty.' " *Mayo*, 2017 IL App (2d) 150390, ¶ 3. Second, the court may find that the State did not meet its evidentiary burden and acquit the defendant. *Manns*, 373 Ill. App. 3d at 238. Third, the court may acquit the defendant based on a finding of not guilty by reason of insanity. *Id.*

¶ 31   Insanity, however, is an affirmative defense that must be raised by the defendant, who bears the burden of proving it by clear and convincing evidence. *Id.* at 239; see 720 ILCS 5/6-2(e) (West 2022). It is well established that a defendant must not only raise an affirmative defense in the trial court but must "raise the defense when the State can present further evidence or argument." *People v. Bardsley*, 2017 IL App (2d) 150209, ¶ 23; see *People v. Shepherd*, 2020 IL App (1st) 172706, ¶ 17. Although *Bardsley* and *Shepherd* did not involve the insanity defense, the principle of fairness still applies here: had defendant placed the State on notice of his intent to raise the insanity defense, the State would have had a chance to introduce evidence to counter it. In *Bardsley*, we

held that the defendant needed to raise his affirmative defense of self-defense in the trial court (*Bardsley*, 2017 IL App (2d) 150209, ¶ 17), but we left open the issue of "when he would have needed" to raise it (*id.* ¶ 23). Here, we hold only that, by raising the insanity defense at essentially "the last minute," after the evidence had been presented and the State had made its closing argument, defendant forfeited the defense. By waiting so long, defendant sprung an unfair surprise on the State, forcing it to improvise a rebuttal to an argument it could not have seen coming.

¶ 32    We clarify that the record does not establish that the trial court actually considered defendant's insanity defense; indeed, it shows otherwise. In his closing argument, defendant first contended that the State failed to prove an element of the offenses: knowledge. Only afterward did defendant request a finding of not guilty by reason of insanity. However, the court pointed out that defendant had not "plead[ed]" insanity, and both defendant and the court expressed uncertainty about whether "that happens in a fitness hearing." When the court announced its judgment, it explained tersely that the State had met its burden to prove all the elements of the remaining offenses. It never ruled on the insanity defense, which it presumably would have done had it found the issue properly before it. The only reasonable inference is that the court found that the insanity defense had been forfeited. So do we.

¶ 33    Having found that defendant forfeited his insanity defense by raising it too late in the trial court, we turn to his alternative contention that his trial counsel was ineffective for failing to request a sanity evaluation, timely raise an insanity defense, and support it with the "readily available evidence" that existed. Defendant argues that counsel's failure to raise the defense promptly and fully was not objectively reasonable and that the error was prejudicial because, given the compelling evidence in the record, it is reasonably probable that the trial court would have

found defendant not guilty by reason of insanity. For the following reasons, we agree with defendant.

¶ 34    To establish ineffective assistance of trial counsel, a defendant must show that (1) counsel's performance was objectively unreasonable and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Manns*, 373 Ill. App. 3d at 239.

¶ 35    "A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity to appreciate the criminality of his conduct." 720 ILCS 5/6-2(a) (West 2022). As noted, the defendant must prove insanity by clear and convincing evidence. *Id.* § 6-2(e).

¶ 36    Here, both *Strickland* prongs are satisfied for the same reason: the existing evidence to support an insanity defense was so strong that trial counsel's failure to raise the defense was both unreasonable and prejudicial. Put differently, it was objectively unreasonable to forgo a strategy that clearly would have created a reasonable probability of a different result.

¶ 37    We note two cases that support our holding. In *Manns*, the defendant was charged with aggravated robbery for taking money at gunpoint from a bank teller. *Manns*, 373 Ill. App. 3d at 233. At his preliminary hearing, the defendant told the trial court that he was " 'an American [P]resident' " and that the bank he robbed was his bank. *Id.* During postarrest detention and several psychological evaluations, he insisted that he was entitled to withdraw the money because he owned the bank. *Id.* at 235, 237, 241. Several of the evaluators reported that the defendant was delusional and had a lengthy history of mental illnesses, that his account of the robbery was " 'almost incoherent,' " and that he had schizoaffective disorder and was " 'floridly psychotic.' " *Id.* at 234-35, 241. At a discharge hearing, defense counsel did not cross-examine one of the two

State witnesses (a police officer who testified that the defendant said that he grew up in Decatur across the street from President Clinton) and did not present any evidence in defense. *Id.* at 236-38. The trial court declined to acquit the defendant and committed him for further treatment. *Id.* at 238.

¶ 38     The appellate court agreed with the defendant that his trial counsel was ineffective for failing to raise an insanity defense because the defendant's behavior at the time of the offense, statements he made in court, and his fitness evaluations beginning 20 days after the offense "len[t] support to the defense [that] he was unable to appreciate the criminality of his conduct." *Id.* at 240. The court stressed that no defense other than insanity was viable. *Id.* at 241.

¶ 39     In *People v. Penn*, 2022 IL App (4th) 210084-U, ¶ 4, the defendant was charged with various offenses arising from his encounter with two police officers. At a discharge hearing, the officers testified that the defendant repeatedly spit on them, delusionally accused them of spitting on him, and appeared to have a mental disorder. *Id.* ¶¶ 19-21. The defense put on no evidence. *Id.* ¶ 22. The trial court found the defendant not not guilty and ordered him to be committed for an extended term of treatment. *Id.* ¶ 24. The appellate court reversed and remanded for a new discharge hearing, holding that trial counsel was ineffective for failing to investigate and present an insanity defense. *Id.* ¶¶ 60, 62. The court noted the defendant's history of psychiatric admissions, the circumstances of the offense, the defendant's outbursts at his preliminary hearing, and a fitness evaluation (three weeks after the offense) reporting that he made incoherent and repetitious statements and appeared to suffer from bipolar disorder. *Id.* ¶¶ 5, 7, 10, 14, 19, 48. Thus, "evidence existed to request a sanity evaluation of [the] defendant" and supported a viable defense of not guilty by reason of insanity. *Id.* ¶ 48.

¶ 40    Turning to the present case, we conclude that the circumstances supporting defendant's claim of ineffective assistance of counsel are even more compelling than those in *Manns* and *Penn*. First, the fitness evaluations were abundant evidence that, at the time of the offenses, defendant had a severe mental illness (and John testified that defendant had not been taking his medication for a week beforehand). O'Connor, who examined defendant less than two months after the incident, diagnosed him with acute schizophrenia. Khan, who examined defendant in March 2023, reported that defendant was "floridly psychotic."

¶ 41    The evaluators based their opinions on actions by defendant that strongly evidenced not merely his unfitness to stand trial but also his inability to understand the wrongfulness of antisocial behavior. In December 2022, O'Connor reported that, when she attempted to introduce herself to defendant, he took no notice of her but kept repeating, " 'What the f*** is going on,' " and could not "engage in coherent discourse"; O'Connor ended the session after three minutes. In the previous two months, defendant had been placed on suicide watch, defecated in his food tray, shouted that staff members were trying to kill him, abused himself physically, and was observed naked in his cell with his head in the toilet. In March 2023, Khan reported that defendant had been placed in "five-point full leather restraints" because he had exhibited aggression to staff members. All of these behaviors were, if anything, more compelling grounds to support an insanity defense than those described in *Manns* and *Penn*.

¶ 42    The evidence at the discharge hearing also supported an insanity defense. John testified that defendant had lived with him since birth and was 37 at the time of the offenses. When defendant was in high school, he was diagnosed with schizophrenia and was prescribed medication. Defendant had not taken that medication in the week preceding the incident on October 4, 2022. On that day, defendant physically attacked John for the first time. John "[did not]

- 13 -

recognize" defendant; he had undergone a "[p]ersonality change." John also testified that, before defendant went off his antipsychotic medicine, he had not been violent. Now that defendant was being properly medicated, John no longer feared for his own safety.

¶ 43 Aside from the sheer unprecedented violence of defendant's behavior, other facts about the attack militated in favor of an insanity defense. There was no premeditation—defendant's acts were spontaneous and not the sort of illegal conduct that requires even a modicum of planning or rational calculation. Moreover, defendant was saying "nutty stuff" and "talking gibberish." Again, these types of considerations are at least as strong here as they were in *Manns* and *Penn*.

¶ 44 For the foregoing reasons, we agree with defendant that his counsel's failure to investigate and timely raise an insanity defense was both deficient performance and prejudicial. (Counsel himself appears to have realized as much, although only at the last moment.) Therefore, defendant is entitled to a new discharge hearing.

¶ 45                                III. CONCLUSION

¶ 46 For the reasons stated, we reverse the judgment of the circuit court of Kane County and remand for a new discharge hearing.

¶ 47 Reversed and remanded.